UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 4:20 CR 595 AGF (SRW) |
| RICHARD RIEF, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Defendant Richard Rief is charged with multiple counts of willfully failing to collect, account for, and pay over to the Internal Revenue Service federal income, Social Security and Medicare taxes due and owing from two of his companies, Med Plus Staffing, LLC ("MPS") and Rief Healthcare ("RHC"), and their employees. Mr. Rief is also charged with willfully failing to file and pay his personal income taxes for 2015 and 2016. Pretrial matters have been referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b).

## PROCEDURAL BACKGROUND

The grand jury returned the original indictment on September 23, 2020. (ECF No. 1). The original indictment charged Mr. Rief with seven counts of willful failure to collect or pay over the employment taxes, commonly known as "trust fund taxes," in violation of 26 U.S.C. § 7202. The dates of the original allegations ranged from the First Quarter of 2014 to the First Quarter of 2017. Mr. Rief was also charged with two counts of willfully failing to file and pay his personal income taxes from 2015 and 2016 in violation of 26 U.S.C. § 7203. (ECF No. 1).

On December 9, 2020, the Defendant filed a Combined Motion to Dismiss Indictment or for Bill of Particulars and a Memorandum in Support. (ECF Nos. 17 & 18). This motion seeks to

-1-

dismiss Counts I-VII of the original indictment, alleging those counts were barred by a three-year statute of limitations. Mr. Rief also requests the dismissal of Count I of the original indictment alleging it was barred by the six-year statute of limitations. (ECF No. 17, at 3-4). Mr. Rief mistakenly alleged Count I related to the First Quarter of 2014; however, Count I relates to the Fourth Quarter of 2014 and falls withing the six-year statute of limitations. The original Count V related to the First Quarter of 2014. At the evidentiary hearing, the undersigned requested post-hearing briefing on the accrual date for the allegations in original Counts I-VII. The motion also seeks to dismiss the indictment for pre-indictment delay in violation of Mr. Rief's due process rights and also requests a bill of particulars. The Government responded on January 6, 2021. (ECF No. 26). The Court held a hearing on these motions on January 29. During the hearing, neither party presented any witnesses or evidence and simply argued their positions. The Court requested post-hearing briefs be filed by February 12.

On February 10, 2021, the grand jury returned a superseding indictment. (ECF No. 31). The superseding indictment added seven more counts of failure to pay over the employment trust fund taxes. The Government noted that the superseding indictment also changed the date of the offense of the original Count V, which allegedly related to the First Quarter of 2014, and replaced it with Count VIII of the superseding indictment which related to the Second Quarter of 2017. (ECF No. 33, at 10). The superseding indictment charged Mr. Rief with fourteen counts of willful failure to collect or pay over the trust fund taxes for various quarters between the Fourth Quarter of 2014 to the First Quarter of 2018, including seven new counts. (ECF No. 31). Mr. Rief is again also charged with two counts of willfully failing to file and pay his personal income taxes from 2015 and 2016. *Id*.

Both parties filed post-hearing briefs on February 12, 2021. (ECF Nos. 33 & 36). Mr. Rief's post-hearing brief challenged the superseding indictment because it substantially broadened or amended the original charges. (ECF No. 33, at 3).[1] Mr. Rief also requested leave to take the deposition of IRS Revenue Officer Steven Friend. (ECF No. 35). However, the undersigned did not find this requested deposition was supported by "exceptional circumstances and in the interest of justice" as required by Federal Rule of Criminal Procedure 15(a)(1). The undersigned denied the motion for leave to take the deposition. (ECF No. 37).

On March 3, 2021, Mr. Rief was arraigned on the superseding indictment. (ECF No. 41). The parties were granted leave to file any additional pretrial motions related to the superseding indictment by March 19, with responses due by April 2. Mr. Rief filed a Motion to Dismiss Superseding Indictment and for Production of Witness Materials on March 19. (ECF Nos. 45 & 46). This motion seeks to dismiss multiple counts of the superseding indictment as being barred by the statute of limitations, dismissal for pre-indictment delay, and for production of grand jury testimony regarding the original Count V (now Count VIII) and the seven additional counts. The Government responded on April 2. (ECF No. 47). Mr. Rief filed a reply on April 13. (ECF No. 50).

## **DISCUSSION, CONCLUSIONS OF LAW, AND RECOMMENDATIONS**

### I.    **Motion to Dismiss Counts as being Barred by the Statute of Limitations**

Counts I through XIV of the superseding indictment alleged Mr. Rief willfully failed to collect, account for, and pay over to the IRS federal income, Social Security and Medicare trust

---

[1] Mr. Rief's post-hearing brief modified his request to dismiss Count I of the original indictment as being outside the six-year statute of limitations and instead requested the dismissal of the original Count V for the same reason. (ECF No. 33, at 8). However, the superseding indictment amended the allegations originally charged in Count V for the willful failure to pay over trust fund taxes from the First Quarter of 2014, to the failure to pay these taxes for the Second Quarter of 2017 as now alleged in Count VIII.

fund taxes due and owing from two of his companies, MPS and RHC, and their employees. The superseding indictment states Mr. Rief filed Forms 940 and 941 reporting the tax due and owing. (ECF No. 31, at 1). However, he allegedly failed to pay the employment trust fund taxes, except where necessary to convince the IRS Revenue Officer to delay a levy or accept an installment agreement. *Id*. Counts I through XIV allege Mr. Rief failed to pay over these taxes owed for various quarters between the Fourth Quarter of 2014 and the First Quarter of 2018 in violation of § 7202.

| Count | Tax Period | Trust Fund Taxes | Charged in Original Indictment |
|---|---|---|---|
| Count I-MPS | 4th Quarter 2014 | $66,893 | Count I |
| Count II-MPS | 1st Quarter 2015 | $80,327 | Count II |
| Count III-MPS | 4th Quarter 2015 | $13,749 | New |
| Count IV-MPS | 1st Quarter 2016 | $46,269 | New |
| Count V-MPS | 2nd Quarter 2016 | $50,583 | Count III |
| Count VI-MPS | 4th Quarter 2016 | $57,437 | New |
| Count VII-MPS | 1st Quarter 2017 | $50,846 | Count IV |
| Count VIII-MPS | 2nd Quarter 2017 | $40,867 | Amended Count V |
| Count IX-MPS | 3rd Quarter 2017 | $22,935 | New |
| Count X-MPS | 4th Quarter 2017 | $28,642 | New |
| Count XI-MPS | 1st Quarter 2018 | $10,354 | New |
| Count XII-RHC | 2nd Quarter 2016 | $20,706 | Count VI |
| Count XIII-RHC | 3rd Quarter 2016 | $12,850 | New |
| Count XIV-RHC | 4th Quarter 2016 | $19,812 | Count VII |
| **Total** | | **$522,270** | |

(*See* ECF No. 31, at 4; and ECF No. 1, at 4).

Mr. Rief argues the statute of limitations for violating 26 U.S.C. § 7202 is the three-year limitation generally set forth in 26 U.S.C. § 6531. Section 6531 provides:

> No person shall be prosecuted, tried, or punished for any of the various offenses arising under the internal revenue laws unless the indictment is found or the information instituted within 3 years next after the commission of the offense.

Mr. Rief claims Counts I-VIII and XII-XIV allege he failed to pay over trust fund taxes due more than three years before the return of the original indictment. (ECF No. 45, at 1-2). He

-4-

further claims each count accrues at the end of the month following the end of the given quarter because the taxes are to be reported and paid by that date. (ECF No. 46, at 4) (citing 26 C.F.R. § 31.6071(a)-1(a)).

However, § 6531 contains a number of exceptions to the general three-year statute of limitation, that instead apply a six-year statute of limitations. One exception is "for the offense of willfully failing to pay any tax, or make any return . . . at the time or times required by law or regulations." § 6531(4). Therefore, the question presented is whether a failure to "pay over" any tax required by § 7202 is a failure to "pay any tax" under § 6531(4), subjecting these claims to a six-year, rather than three-year, statute of limitations.

Mr. Rief argues the "indictment makes only a conclusory allegation of willful failure and better-reasoned authority finds that the three-year statute applies to violations of [26] U.S.C. § 7202." (ECF No. 17, at 2). Mr. Rief notes the indictment "points to a boat, an airplane, and an automobile as evidence of intent, [the Government] omit[s] any context and ignore[s] the relevant time frame to urge an inference of intent." (ECF No. 18, at 1). He also notes a costly billing investigation in 2014 which caused his business to fall behind. *Id.* at 4.

Mr. Rief alleges he worked with IRS Revenue Officer Steven Friend in an attempt to develop a payment plan, but he was unable to recover and satisfy the overdue taxes. *Id.* He notes his selling of assets, loans from family members, his negative net worth, contact with Revenue Officer Friend, and the absence of any deceptive conduct as evidence of the lack of his willful failure or refusal to pay any taxes. *Id.* at 4-5. While the Defendant's allegations may be relevant to a possible defense, the superseding indictment clearly alleges Mr. Rief "did willfully fail to collect, account for, and pay over" to the IRS any of the taxes alleged in Counts I through XIV of the superseding indictment. (ECF No. 31, at 3-4).

-5-

While the case law presents a mix of authority on the three-year or six-year statute of limitations, Mr. Rief cites two cases which held the six-year statute of limitations found in § 6531(4) did not apply to the willful failure to pay over employment trust fund taxes in violation of § 7202. (ECF No. 18, at 3-4) (citing *United States v. Block*, 497 F. Supp. 629, 631-32 (N.D. Ga. 1980); and *United States v. Brennick*, 908 F. Supp. 1004, 1018-19 (D. Mass. 1995)).[2] Mr. Rief claims *Block* and *Brennick* rely on the statutory scheme which does not specify a six-year statute of limitation for a violation of 26 U.S.C. § 7202, and note that Congress used specific language for § 7202 that takes it out of the exception in 26 U.S.C. § 6531(4). He notes all of the contrary authority presumes Congressional intent, despite significant differences in terms. (ECF No. 18, at 3).

In evaluating this issue, *Block* noted,

However, the key words of § 7202, "collect, account for, and pay over" are entirely absent from the subsections of § 6531 which establish the longer six-year period of limitations. It seems unlikely to the Court that Congress would have used the language of so many of the § 7201 *et seq.* code sections when drafting the subsections of § 6531 but omit use of the key words of § 7202 if it had intended to make failure to "pay over" third party taxes subject to the six-year statute of limitations.

*Block*, 497 F. Supp. at 632. *Block* also noted § 6531(4) refers only to "the offense" of willfully failing to pay any tax or make any return, not a class of offenses. *Id*. The court considered § 7203 as "the offense" which criminalized these acts; the use of the singular in § 6531(4) suggested that this was the only offense to which it referred. *Id*. In *Brennick*, the court followed *Block*. 908 F. Supp. at 1018-19. In particular it adopted *Block's* rationale that § 6531(4)'s use of the singular "offense" related to § 7203, rather than § 7202. *Id*.

---

[2] Mr. Rief cites contrary authority including *United States v. Adam*, 296 F.3d 327, 330-331 (5th Cir. 2002); *United States v. Gollapudi*, 130 F.3d 66, 69-70 (3rd Cir. 1997); and *United States v. Musacchia*, 900 F. 2d 493, 498-500 (2d Cir. 1990). He notes his belief that these cases are not controlling in the Eighth Circuit and are misguided. (ECF No. 18 at 3, n.1).

In opposition, the Government notes that six different circuit courts have determined a six-year statute of limitations applies to § 7202. (ECF No. 26, at 4-5) (citing *United States v. Blanchard*, 618 F.3d 562, 568-69 (6th Cir. 2010); *United States v. Adam*, 296 F.3d 327, 331-32 (5th Cir. 2002); *United States v. Gilbert*, 266 F.3d 1180, 1186 (9th Cir. 2001); *United States v. Gollapudi*, 130 F.3d 66, 70 (3d Cir. 1997); *United States v. Evangelista*, 122 F.3d 112, 119 (2d Cir. 1997) (reaffirming prior holding in *United States v. Musacchia*, 900 F.2d 493, 499-500 (2d Cir. 1990), vacated in part on other grounds, 955 F.2d 3, 4 (2d Cir. 1991)); and *United States v. Porth*, 426 F.2d 519, 522 (10th Cir. 1970)).

The court in *Gollapudi* began its analysis by noting that when interpreting a statute, "the starting point is the language of the statute itself. In most situations, the plain language rule is the preferred method of statutory interpretation." 130 F.3d at 70 (citations omitted).

> Under a plain reading of this statute, we find it clear that violations of § 7202 are subject to a six-year statute of limitations under § 6531(4). Specifically, 26 U.S.C. § 7202 makes it an offense for an employer to willfully fail to "account for and pay over" to the IRS taxes withheld from employees. Given that § 6531 pertains to "failing to pay any tax," the District Court correctly found that the failure to pay third-party taxes as covered by § 7202 constitutes failure to pay "any tax," and thus, is subject to the six-year statute of limitations under § 6531(4).

*Id.*; *see also Gilbert*, 266 F.3d at 1186 (applying the six-year statute of limitations to violations of § 7202).

In addition to its plain reading of the statute, *Gollapudi* rejected the statutory interpretation of the *Block* decision, finding that § 6531 contains the statute of limitations for all criminal tax violations. 130 F.3d at 70-71. "The offenses which fall under the eight exceptions to § 6531 are included either by general description of the proscribed conduct or by a reference to a specific section of the code." *Id.* at 70. "[W]here Congress intended to limit the applicability of the § 6531 exceptions, it unambiguously did so." *Id.* Four of the § 6531 subsections are expressly

limited to specific statutory offenses. *Id*. However, the four subsections containing "a general description of offenses" were not limited to violations of § 7203 or to any other specific offense. *Id.* 70-71. *Gollapudi* found "[t]he focus must be on the duty imposed by these specific sections of the Code, not on the particular words present or absent in an attempt to reconstruct congressional intent. An employer's duty to pay taxes withheld from his employees is at least as great as the duty to pay personal income taxes." *Id.* at 71 (citations omitted).

*Gollapudi* also rejected *Block's* analysis of § 6531(4)'s use of the word "offense" rather than "offenses." *Id*. at 71. The court held, "'the language of section 6531(4)—applying the six-year statute of limitations to 'the offense of willfully failing to pay any tax, or make any return . . . at the time or times required by law or regulations'—suggests that it applied to any of several sections of the Code that define such an offense." *Id*. (quoting *Musacchia*, 900 F.2d at 500 and 26 U.S.C. § 6531(4)).

Finally, *Gollapudi* noted "it would be inconsistent for Congress to have prescribed a six-year limitation period for the misdemeanor offense defined in 26 U.S.C. § 7203 (failure to file a return or pay a tax) while providing only a three-year limitation period for the felony offense defined in § 7202." 130 F.3d at 71 (citing *Musacchia,* 900 F.2d at 500). "[I]t would make little sense if the period in which an offense could be prosecuted for the misdemeanor of failing to file a tax return was twice as long as the period in which an offender could be prosecuted for the felony of failure to pay taxes over to the IRS collected on behalf of employees." *Id.*

In *Blanchard*, the Sixth Circuit found "[t]he rationale offered in *Brennick* and *Block* might be more persuasive if the language of § 6531(4) better matched that of § 7203. However, several actions criminalized under § 7203—including the willful failure to keep required records or supply required information—are not listed under § 6531(4)." 618 F.3d at 569. *Blanchard*

found "the plain language of § 6531 supports the application of a six-year period of limitations," and noted all of the circuit courts which have considered the issue held that a six-year limitation period applies. *Id.* at 567. "In the absence of a more perfect correspondence between § 6531(4) and § 7203, we hesitate to create an inter-circuit split on this issue." *Id. at* 569.

Although the Eighth Circuit does not have a case directly on point, the District of Nebraska followed the circuit court decisions applying the six-year statute of limitations.

> Any person required "to collect, account for, and pay over any tax imposed . . . who willfully fails to collect or truthfully account for and pay over such tax shall, in addition to other penalties provided by law, be guilty of a felony . . . ." 26 U.S.C.A. § 7202. Prosecutions for willfully failing to pay over taxes withheld from employee wages are subject to the statute of limitations described in 26 U.S.C.A. § 6531(4). *United States v. Gollapudi*, 130 F.3d 66, 70 (3d Cir. 1997) (holding a § 7202 offense for willfully failing to "account for and pay over" to the IRS taxes withheld from employees is subject to a six-year statute of limitations under § 6531(4)); *United States v. Porth*, 426 F.2d 519, 521–22 (10th Cir. 1970) (holding charges of willful failure to truthfully account for and pay over to the IRS FICA and general income taxes withheld from wages is subject to the six-year statute of limitations of § 6531(4)).

*United States v. Doll*, 4:19CR3012, 2019 WL 4454415, at *1 (D. Neb. Aug. 30, 2019), *report and recommendation adopted,* 4:19CR3012, 2019 WL 4450691 (D. Neb. Sept. 17, 2019).

The undersigned agrees with the statutory analysis of the six circuit courts and the District of Nebraska. The six-year statute of limitations in 26 U.S.C. § 6531(4) applies to all of the alleged violations of 26 U.S.C. § 7202.

> *Doll* also determined the date on which the statute of limitations is deemed to commence.

> Doll's withholdings from employee wages, and his alleged failure to pay over all money withheld, occurred during the 2012 tax year and before April 15, 2013. Pursuant to § 6513(c), for the purposes of determining the limitations period for any criminal prosecution, Doll's tax obligation for remuneration or payment of 2012 tax withholdings is deemed to commence on April 15 of the succeeding calendar year; that is, April 15, 2013.

2019 WL 4454415, at *4.

Section 6513(c)(1) provides: "If a return for any period ending with or within a calendar year is filed before April 15 of the succeeding calendar year, such return shall be considered filed on April 15 of such succeeding calendar year." The district court in *United States v. Whatley* applied this statute to the willful failure to pay employment taxes in violation of § 7202. No. 2:09CR531DAK, 2010 WL 1236401, at *2 (D. Utah Mar. 29, 2010). The court denied a motion to dismiss based on the statute of limitations for a quarter ending on June 30, 2003, and held the limitation period "began to run on April 15 of the succeeding calendar year—April 15, 2004." *Id.* Thus, an indictment returned on July 22, 2009, was timely filed. *Id.*

Courts have reached the same conclusion for allegations of filing false quarterly tax returns. *See United States v. Davis*, No. 08-3033-01-CR-S-RED, 2009 WL 4281988, at *2 (W.D. Mo. May 8, 2009), *report and recommendation adopted*, No. 08-3033-01-CR-S-RED, 2009 WL 3698426 (W.D. Mo. Nov. 3, 2009). *Davis* denied a motion to dismiss based on the statute of limitations, holding under § 6513(c), the limitations period began on April 15 of the following year. *See also United States v. Keleta*, 4:16-CR-388 RLW(SPM), 2018 WL 9439841, at *1 (E.D. Mo. Mar. 1, 2018), *report and recommendation adopted*, 4:16-CR-388 RLW(SPM), 2018 WL 9439846 (E.D. Mo. Mar. 16, 2018) (denying motion to dismiss based on the statute of limitations, holding that under *United States v. Habig*, 390 U.S. 222, 225 (1968), the limitation period did not start to run until April 15, 2012, for the charge of willfully aiding and assisting in the filing of a false or fraudulent federal income tax return for 2011). *Habig* held that when a tax return is filed before the statutory deadline, the statute of limitations begins to run on the date of the statutory deadline. 390 U.S. at 225. "[I]f a taxpayer anticipates the April 15 filing date by filing his return on January 15, the six-year limitations period for prosecutions under § 6531 commences to run on April 15." *Id*. However, if the taxpayer receives an extension of time to file

the return, then the statute of limitations would begin to run on the date the return was filed. *Id.* at 226-227.

Mr. Rief cites *United States v. Ogbazion*, 3:15-cr-104, 2016 WL 6070365, at *10 (S.D. Ohio Oct. 17, 2016), *United States v. Sams*, 865 F.2d 713, 715-16 (6th Cir. 1988), and *United States v. Quinn*, 09–20075–01–JWL, 2011 WL 382369, at*1 (D. Kan. Feb. 3, 2011), to argue the statute of limitations begins to run when the failure to pay the tax "becomes willful." (ECF No. 46, at 5). However, Counts I through XIV of the superseding indictment relate to the failure to pay over trust fund taxes. Each of those taxes were to be paid over less than six years before the return of the original indictment. Therefore, Mr. Rief's failure to make these payments could not "become willful" before the taxes were actually due to be paid. These cases do not advance Mr. Rief's position that the statute of limitations bars prosecution of any of the counts in the superseding indictment.

Mr. Rief also claims the superseding indictment alleges he "willfully failed to pay taxes immediately in 2014 when he purportedly manipulated the Revenue Officer;" therefore, the statute of limitations accrued in early 2014. (ECF No. 46, at 6-7). Section 7202 provides, "Any person required under this title to collect, account for, and pay over any tax imposed by this title who willfully fails to collect or truthfully account for and pay over such tax shall . . . be guilty of a felony." 26 U.S.C. § 7202. Mr. Rief is alleged to have filed Forms 940 and 941 reporting the taxes due and owing. (ECF No. 31, at 1). However, he failed to pay over the employment taxes as alleged in Counts I through XIV. As none of the taxes alleged in each of these counts was due and owing in early 2014, the statute of limitation cannot "begin to run before [he] committed the acts upon which the crimes were based." *Habig*, 390 U.S. at 225.

-11-

As Mr. Rief is alleged to have filed the appropriate tax forms but failed to pay over the employment trust fund taxes, the statute of limitations began to commence on April 15 of the succeeding calendar year for all employee related trust fund taxes owed during the preceding year. The oldest alleged violation in the superseding indictment relates to the Fourth Quarter of 2014. Even if the statute of limitations began to accrue on the last day of the following month, January 31, 2015, the original indictment was returned on September 23, 2020, well within six years of that date.

Count V of the original indictment alleged a failure to pay over the trust fund taxes for the First Quarter of 2014. The Government acknowledged this was a mistake and that count should have related to the Second Quarter of 2017. (ECF No. 33, at 10). The superseding indictment removed all allegations related to the First Quarter of 2014 and added Count VIII which alleges a failure to pay over the trust fund taxes for the Second Quarter of 2017. (ECF No. 31, at 4). The issue of whether the statute of limitations begins to accrue on April 15 of the following year or on the last day of the month following the end of the quarter is now moot. As all of the tax periods alleged in Counts I through XIV of the superseding indictment occurred within six years of the return of the original indictment, Defendant's motion to dismiss these counts based on the statute of limitations should be denied.

## II.    Mr. Rief's Challenge to the Superseding Indictment and Its Relation to the Statute of Limitations

Mr. Rief originally argued the superseding indictment was improper and untimely because "the second indictment must not 'substantially broaden or amend the original charges." (ECF No. 33, at 3-5) (quoting *United States v. Yielding*, 657 F.3d 688, 704 (8th Cir. 2011)). He also cites *United States v. Brassington*, 09–CR–45 (DMC), 2010 WL 3982036, at *10 (D.N.J. Oct. 8, 2010). Citing the same key cases in his memorandum in support of the motion to dismiss

filed on March 19, Mr. Rief argued the superseding indictment supports the three-year statute of limitations period. (ECF No. 46, at 7-9).

In *Yielding,* the original indictment was returned on May 8, 2008. 657 F.3d at 698. A superseding indictment was returned on November 5, 2008, and a second superseding indictment was returned on February 4, 2009. *Id*. The original indictment was timely filed within the five-year statute of limitations period. *Id.* at 703. However, by the time the second superseding indictment was returned, several of the payments alleged in count one of the second superseding indictment occurred more than five years before the last indictment was returned. *Id.*

> For limitations purposes, "a superseding indictment filed while the original indictment is validly pending relates back to the time of filing of the original indictment if it does not substantially broaden or amend the original charges." . . . Because the original indictment in this case was still pending at the time the second superseding indictment was filed, the second superseding indictment "relates back" to the time of filing of the original indictment for limitations purposes, so long as it does not "substantially broaden or amend the original charges."
>
> To determine whether a superseding indictment substantially broadens or amends a pending timely indictment, we agree with other courts that it is appropriate to consider "whether the additional pleadings allege violations of a different statute, contain different elements, rely on different evidence, or expose the defendant to a potentially greater sentence." The "touchstone" of this analysis is whether the original indictment provided the defendant with fair notice of the subsequent charges against him.

*Id*. at 703–04 (citations omitted).

*Brassington* reached the same conclusion holding "the day on which the original indictment was filed controls for statute of limitation purposes, provided that . . . the superseding indictment does not materially broaden or substantially amend the charges in the first." 2010 WL 3982036, at *9 (quoting *United States v. Oliva,* 46 F.3d 320, 324 (3d Cir.1995)). *Brassington* found that counts timely filed in the original indictment would not be dismissed from the superseding indictment unless the superseding indictment "materially broadens or substantially amends the original charges." *Id.* As in *Yielding*, the court noted whether the superseding

-13-

indictment materially broadens or substantially amends the original charges turns on "whether the defendant was provided sufficient notice." *Id.* To determine whether the original indictment gave the defendant sufficient notice, "the Court will consider 'whether the additional pleadings allege violations of a different statute, contain different elements, rely on different evidence, or expose the defendant to a potentially greater sentence.'" *Id.* (citing *United States v. Birks,* 656 F. Supp.2d 454 (D.N.J. 2009); and *United States v. Salmonese,* 352 F.3d 608, 622 (2d Cir.2003)).

The court in *Brassington* did not dismiss the charges which were made in the original indictment returned in January of 2009, and realleged in the superseding indictment in November of 2009. 2010 WL 3982036, at *9. However, the court did dismiss new charges in the superseding indictment against defendants who had not been so charged in the original, and which were now beyond the statute of limitations, because those new charges materially broadened and substantially amended the charges in the original indictment. *Id.* at 9-10.

The original indictment against Mr. Rief was still pending at the time the superseding indictment was returned. None of the new or amended charges alleged against Mr. Rief in the superseding indictment are beyond the six-year statute of limitations. The new counts related to taxes not paid after various quarters, from the Fourth Quarter of 2015 to the First Quarter of 2018. The oldest count in the original indictment, Count V, which related to the trust fund taxes for the First Quarter of 2014, was amended into Count VIII which now relates to the Second Quarter of 2017. This charge also falls within the six-year statute of limitations.

The new and amended charges in the superseding indictment do not materially broaden or substantially amend the charges in the original indictment. Each of the new charges in Counts III, IV, VI, IX, X, XI, and XIII allege violations of § 7202 by willfully failing to collect or pay over the employment trust fund taxes. These new counts allege violations of the same statute,

contain the same elements, and they appear to reflect the same pattern of behavior for the same companies as originally alleged in Count I-VII. They simply allege seven additional quarters. The new counts do potentially increase the maximum possible punishment, but only if the Court were to impose a long series of consecutive sentences.

Mr. Rief claims the superseding indictment also requires the dismissal of Counts XV and XVI as being barred by the three-year statute of limitations. (ECF No. 45, at 5, and ECF No. 46, at 9-10). However, Counts XV and XVI allege Mr. Rief willfully failed to file his personal income tax return or pay his income taxes to the IRS in violation of 26 U.S.C. § 7203. (ECF No. 31, at 4). The willful failure to file an income tax return or pay income taxes, in violation of § 7203, is subject to the six-year statute of limitations period. *Gollapudi*, 130 F.3d at 71 (citing 26 U.S.C. § 6531(4)). Mr. Rief provides no authority to support his claim that a three-year statute of limitations applies to violations of § 7203.

Not only did Mr. Rief have sufficient notice of these possible new and amended charges, the additional charges are all within the statute of limitations. The Court should not dismiss them. Mr. Rief's arguments do not support his request to dismiss any counts from the superseding indictment, nor do they support his argument that the three-year statute of limitations should be applied rather than the six-year statute. The undersigned recommends denying Mr. Rief's allegations against the superseding indictment and his motions to dismiss the indictment based on the statute of limitations.

### III.   Motion to Dismiss the Indictment based on Pre-Indictment Delay

Mr. Rief argues the Court must dismiss the indictment and superseding indictment, pursuant to the due process clause of the Fifth Amendment, due to the "oppressive delay" between his missing tax payments, beginning in 2014, and the return of the original indictment

on September 23, 2020. (ECF No. 18 at 4-5, and ECF No. 45, at 3-4). He alleges he previously worked with an IRS Revenue Officer and attempted to pay the missing taxes. (ECF No. 18, at 4-5). Mr. Rief also met with two IRS special agents for an extensive interview on July 30, 2019. *Id.* at 5. Although his repayment plan did not succeed, Mr. Rief contends "he did not engage in any deceptive conduct, attempt to hide assets, or willfully fail or refuse to pay any tax." *Id.* He alleges the Government's delay will cause him "to incur substantial additional costs to once again establish his inability to pay and the lack of any willful failure to pay over the taxes." *Id.* at 5-6. He claims the delay was unreasonable and prejudicial. *Id.* at 6. The Court held a hearing on this issue; however, Mr. Rief did not introduce any witnesses or evidence in support of these claims. The Government opposes this motion. (ECF No. 26).

"Two provisions of the United States Constitution guard criminal defendants against unreasonable pre-trial delay," namely the Sixth Amendment right to a speedy trial, and "the due process clause of the Fifth Amendment." *United States v. Jackson*, 446 F.3d 847, 849 (8th Cir. 2006) (citations omitted) (reversing a district court's order dismissing an indictment for unreasonable delay). Mr. Rief's argument rests on due process concerns.

Prior to indictment or arrest, due process concerns "play a limited role in protecting against oppressive delay," and the applicable "statutes of limitations provide the primary guarantee." *Id.* (citing *United States v. Brockman*, 183 F.3d 891, 895 (8th Cir. 1999)).

> The Supreme Court has recognized that "the interests of the suspect and society are better served if, absent bad faith or extreme prejudice to the defendant, the prosecutor is allowed sufficient time to weigh and sift evidence to ensure that an indictment is well founded." As a result, a defendant must overcome a high hurdle when contending that a pre-indictment delay that does not violate the statute of limitations is violative of the due process clause.

*Id.* (quoting *United States v. Eight Thousand Eight Hundred and Fifty Dollars ($8,850)*, 461 U.S. 555, 563 (1983)).

The defendant must carry the burden of showing unconstitutional pre-indictment delay. *Id.* at 849. To meet this burden, the defendant must satisfy a two-part test. *Id.* "The defendant must establish that: (1) the delay resulted in actual and substantial prejudice to the presentation of his defense; and (2) the government intentionally delayed his indictment either to gain a tactical advantage or to harass him." *Id.* (citations and footnote omitted).

The superseding indictment alleges Mr. Rief began failing to pay over the trust fund taxes in 2014 or early 2015. This continued through 2018. Mr. Rief alleges he met with two IRS special agents for an interview on July 30, 2019. (ECF No. 18, at 5). The grand jury returned the original indictment on September 23, 2020. (ECF No. 1). The only prejudice Mr. Rief alleges is the cost of establishing in this proceeding "his inability to pay and the lack of any willful failure to pay over these taxes." (ECF No. 18, at 5-6).

The undersigned recommends finding Mr. Rief has not met his burden. Most significantly, he has not alleged any actual and substantial prejudice to the presentation of his defense. "To satisfy his burden, he must identify specific witnesses or documents lost during the delay and the information they would have provided," and "that the missing testimony or information is not available through other sources." *Jackson,* 446 F.3d at 851 (citing *United States v. McDougal*, 133 F.3d 1110, 1113 (8th Cir. 1998); and *United States v. Bartlett*, 794 F.2d 1285, 1290 (8th Cir. 1986)). Mr. Rief does not allege any evidence or testimony favorable to him has been lost due to any delay. Rather, he argues only that his defense will be expensive, and the "delay without communication" was unreasonable and prejudicial. (ECF No. 18, at 6). As the Court granted Mr. Rief's motion for the appointment of counsel, the cost of his defense will largely be borne by the taxpayers. (ECF Nos. 15, 22, & 25). Nor does he identify any missing information that could not be provided through other sources. Mr. Rief does not establish that

due process, or any other constitutional provision, requires investigating agents to communicate with a potential defendant between an interview and an indictment.

The Eighth Circuit has previously found that speculative and conclusory claims are insufficient to show actual and substantial prejudice. *See Jackson*, 446 F.3d at 852; *see also United States v. Hance*, 501 F.3d 900, 906 (8th Cir. 2007); and *United States v. Gladney*, 474 F.3d 1027, 1032 (8th Cir. 2007) ("To establish actual prejudice, a defendant must identify witnesses or documents lost during the delay period. However, actual prejudice cannot be established by defendant's speculative or conclusory claims of possible prejudice as a result of the passage of time."). "Alleged prejudice is insufficient to establish a due process violation if it is 'insubstantial, speculative, or premature.'" *United States v. Grap*, 368 F.3d 824, 829 (8th Cir. 2004) (quoting *United States v. Golden,* 436 F.2d 941, 943 (8th Cir.1971), *cert. denied,* 404 U.S. 910 (1971)). The prejudice alleged in pre-indictment delay cases typically involves "the unavailability of a trial witness or other evidence, or other circumstances impairing a defendant's ability to defend himself." *Id*. at 830.

The undersigned recommends finding Mr. Rief has not met his burden to show any pre-indictment delay resulted in actual and substantial prejudice to the presentation of his defense. As Mr. Rief has not established any facts demonstrating such prejudice to the presentation of his defense, the Court need not consider the question of whether the Government intentionally delayed bringing charges for an improper purpose. *United States v. Sturdy*, 207 F.3d 448, 452 (8th Cir. 2000) (citing *United States v. Savage*, 863 F.2d 595, 598 (8th Cir. 1988)). Even if Mr. Rief had shown substantial prejudice, he has not demonstrated any improper governmental purpose regarding the delay. He argues the pre-indictment delay was "either intentional or harassment." (ECF No. 18, at 6). However, Mr. Rief relies solely on assumptions and

-18-

speculation—not evidence. Mr. Rief's motion to dismiss based on the alleged pre-indictment delay should be denied.

To his credit, Mr. Rief suggests denying this motion without prejudice for "reconsideration by the District Court when trial is set and the availability of material witnesses may be determined." (ECF No. 45, at 3-4). As the motion is currently presented, the undersigned recommends denial of the motion to dismiss for pre-indictment delay. However, a denial without prejudice would allow Mr. Rief additional time to investigate whether he has suffered any actual and substantial prejudice in the presentment of his defense, as well as any evidence that the Government intentionally delayed his indictment either to gain a tactical advantage or to harass him.

## IV.    BILL OF PARTICULARS

"If a defendant believes that an indictment does not provide enough information to prepare a defense, then he or she may move for a bill of particulars." *United States v. Livingstone*, 576 F.3d 881, 883 (8th Cir. 2009) (citing Fed. R. Crim. P. 7(f)). "The purpose of a bill of particulars is to inform the defendant of the nature of a charge with sufficient precision to enable him to prepare for trial and to avoid or minimize the danger of surprise at trial." *Id.* It is well established that "a bill of particulars is not a discovery device to be used to require the government to provide a detailed disclosure of the evidence that it will present at trial." *Id.*

Mr. Rief alleges the indictment "makes only conclusory and vague allegations of willfulness and ability to pay the taxes in question." (ECF No. 17, at 2). He does not dispute that the indictment and superseding indictment both allege that he did "willfully fail" to collect, account for, and pay over to the IRS the employment trust fund taxes, and that he did "willfully fail" to make an income tax return or pay tax to the IRS for calendar years 2015 and 2016. (ECF

Nos. 1 and 31). Nor does he deny that both charging documents allege, "In 2017, while Rief faced back taxes for both his businesses and himself, Rief spent $20,250 towards a 50-foot yacht, almost $20,000 in payments towards his Maserati, and $8,600 on a hangar for his airplane." *Id.* at 1. He does not deny that the charging documents allege, "Rief failed to pay employment taxes due and owing, except where necessary to convince the IRS Revenue Officer assigned to his case to delay a levy or accept an installment agreement." *Id.* Rather, he contends "[t]he Government should be required to issue a bill of particulars or an amended indictment to identify what acts or omissions of Defendant constituted willful violations of the tax laws cited, in order to permit Defendant to prepare his defense." (ECF No. 17, at 3).

The Government opposes the motion for a bill of particulars, noting the indictment meets the requirements of Rule 7(c) to provide a "plain, concise, and definite written statement of the essential facts constituting the offense charged." (ECF No. 26, at 6-7). The Government further notes it has produced more than ten thousand pages of discovery. *Id.* at 8. The Government contends the detailed indictment and the discovery have informed Mr. Rief of the nature of the charges with sufficient precision to enable him to prepare for trial and to avoid or minimize the danger of surprise at trial as *Livingstone* requires. *Id.* (citing *Livingstone,* 576 F.3d at 883).

"An indictment is legally sufficient on its face if it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution." *United States v. Steffan*, 687 F.3d 1104, 1109 (8th Cir. 2012) (citations and quotations omitted); *see also Hamling v. United States*, 418 U.S. 87, 117 (1974). Indictments are not reviewed "in a hyper technical fashion and should be 'deemed sufficient unless no reasonable construction can be said to charge the offense.'" *United States v, O'Hagan*,

139 F.3d 641, 651 (8th Cir. 1998) (quoting *United States v. Morris*, 18 F.3d 562, 568 (8th Cir. 1994)). "Furthermore, '[a]n indictment is normally sufficient if its language tracks the statutory language." *United States v. Hayes*, 574 F.3d 460, 472 (8th Cir. 2009) (quoting *United States v. Sewell*, 513 F.3d 820, 821 (8th Cir. 2008)).

The superseding indictment identifies the relevant dates of the alleged offenses, the location of the alleged offenses, and Mr. Rief's willful failure to pay these taxes. It also includes an allegation that Mr. Rief took action to convince an IRS Revenue Officer to delay a levy or accept an installment agreement. It accuses him of spending money on "lavish purchases" including thousands of dollars towards a 50-foot yacht, his Maserati, and on a hangar for his airplane, rather than paying the taxes he owed to the IRS.

The Court should find the superseding indictment provides a "plain, concise, and definite written statement of the essential facts constituting the offense charged" as required by Rule 7(c), and alleges sufficient facts to enable Mr. Rief to understand the nature of the charges and to prepare for trial without any reasonable danger of surprise. *See Livingstone*, 576 F.3d at 883; *see also United States v. McLain*, 646 F.3d 599, 602 (8th Cir. 2011) ("Section 7202 is violated only when an employer "willfully fails" to account for and pay employment taxes."); and *Sansone v. United States*, 380 U.S. 343, 351 (1965) (Violations of § 7203 require "only willfulness and the omission of the required act—here the payment of the tax when due."). Therefore, the undersigned recommends the Court deny Mr. Rief's Motion for a Bill of Particulars.

## V.    Production of Discovery and Witness Materials

Mr. Rief also seeks production of grand jury testimony which may be used to impeach a Government witness at trial or offered as substantive evidence. (ECF No. 45, at 4-5) (citing *United States v. Dennis*, 625 F.2d 782, 795 (8th Cir. 1980)). In particular, Mr. Rief seeks

production of the grand jury testimony relative to Count V in the original indictment, alleging the failure to pay over the employment trust fund taxes of $40,867.47 for MPS for the First Quarter of 2014. The Government admitted this original charge contained a mistake. (ECF No. 33, at 10). It then presented a superseding indictment alleging Count VIII for failure to pay over the employment trust fund taxes of $40,867 for MPS for the Second Quarter of 2017. Mr. Rief also seeks grand jury testimony relative to the additional charges added in the superseding indictment.[3] (ECF No. 45, at 4-5; ECF No. 46, at 9; and ECF No. 50, at 9).

The Government acknowledges its obligation to disclose exculpatory and impeaching evidence under *Brady v. Maryland*, 363 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972). (ECF No. 47, at 12) (citing *United States v. Szczerba*, 897 F.3d 929, 941 (8th Cir. 2018); and *United States v. Heppner*, 519 F.3d 744, 750 (8th Cir. 2008)). The Government also acknowledges its obligation to produce Jencks Act materials. *Id*. at 12. Rather than argue it does not have to produce the requested grand jury transcripts at all, the Government asserts the material does not have to be produced at this time.

As the Government correctly cites, *Szczerba* held, "Under the rule in our circuit *Brady* does not require pretrial disclosure, and due process is satisfied if the information is furnished before it is too late for the defendant to use it at trial." 897 F.3d at 941 (quoting *United States v. Spencer*, 753 F.3d 746, 748 (8th Cir. 2014)). *Heppner* held disclosure of *Brady* material the day prior to trial allowed the defendants sufficient time to use the information at trial. 519 F.3d at 750. Information which is simply Jencks material need not be disclosed until a witness called by the Government has testified on direct examination in trial, and the defendant has made a motion

---

[3] Mr. Rief also filed a discovery request seeking personnel files for two IRS special agents. (ECF No. 16). However, those records are not a part of Mr. Rief's motion seeking production of witness materials.

for such information. *United States v. Green*, 151 F.3d 1111, 1115 (8th Cir. 1998); and 18 U.S.C. 3500(b).

The record suggests an error was made during the presentation of the case to the grand jury for the original indictment with respect to the original Count V. The charge was modified in the superseding indictment as Count VIII which alleges the same company and the same amount of trust fund taxes for a different financial quarter. Therefore, the grand jury records related to these matters would appear to be both *Giglio* and Jencks material. Under the precedent in this circuit, the undersigned recommends denying the production of the grand jury material at this stage of the case. However, the undersigned recommends setting a date for the production of these materials in advance of trial to provide Mr. Rief with adequate time to use the information at trial.

## **RECOMMENDATIONS AND ORDERS**

Accordingly,

**IT IS HEREBY RECOMMENDED** that the Court **DENY** Defendant's Motion to Dismiss the Indictment as being barred by the statute of limitations. (ECF Nos. 17 & 45).

**IT IS FURTHER RECOMMENDED** that the Court **DENY** Defendant's Motion to Dismiss the Indictment for pre-indictment delay in violation of the due process clause. (ECF Nos. 17 & 45).

**IT IS FURTHER RECOMMENDED** that the Court **DENY** Defendant's Motion for a Bill of Particulars. (ECF No. 17).

**IT IS FURTHER RECOMMENDED** that the Court **DENY at this time** Defendant's Motion for Production of Witness Materials and Discovery, including the grand jury transcripts. (ECF No. 45).

The parties are advised that they have fourteen (14) days in which to file written objections to this Memorandum, Order, and Recommendations, unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. *See Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990); *see also* 28 U.S.C. § 636(b)(1)(A), Fed. R. Crim. P. 59(a).

The trial of these matters has been set for Monday, June 28, 2021, at 9:00 a.m., before the Honorable Audrey G. Fleissig, United States District Judge.

*/s/ Stephen R. Welby*
Stephen R. Welby
United States Magistrate Judge

Dated this 30th day of April, 2021